IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-44

 No. COA19-617

 Filed 2 March 2021

 Pitt County, No. 16CRS055654

 STATE OF NORTH CAROLINA

 v.

 CHARLIE JAMES HARRIS, III, Defendant.

 Appeal by defendant from judgment entered 1 March 2018 by Judge Marvin

 K. Blount III in Superior Court, Pitt County. Heard in the Court of Appeals 14 April

 2020.

 Attorney General Joshua H. Stein, by Special Counsel to the Chief Deputy
 Attorney General, Shannon J. Cassell, for the State.

 Jarvis John Edgerton, IV, for defendant-appellant.

 STROUD, Chief Judge.

¶1 Defendant appeals judgments convicting him of first degree attempted murder

 and assault with a deadly weapon with intent to kill inflicting serious injury. Under

 North Carolina General Statute § 8-57, defendant’s wife was “both competent and

 compellable to” testify against defendant as this is “a prosecution for assaulting or

 communicating a threat to the other spouse[.]” Defendant’s wife’s testimony

 regarding his statements to her while he was attacking her with a knife and while
 STATE V. HARRIS

 2021-NCCOA-44

 Opinion of the Court

 she was attempting to escape were not “prompted by the affection, confidence, and

 loyalty engendered by such relationship,” so these statements were not “confidential

 communication[s.]” The trial court did not err in compelling wife to testify as to the

 statements’ defendant made and in not striking her testimony. N.C. Gen. Stat. § 8-

 57 (2015); State v. Rollins, 363 N.C. 232, 237, 675 S.E.2d 334, 337 (2009) (citations

 and quotation marks omitted). We conclude there was no error.

 I. Background

¶2 On the first day of defendant’s jury trial, defendant’s wife, Leah,1

 testified that on 30 July 2016, she and defendant got into an argument, and when she

 began walking upstairs defendant stabbed her multiple times in her back, arms, leg,

 stomach, face, and neck. Leah further testified that defendant stopped stabbing her

 after he cut himself, and he began taking off her pants; when she asked what he was

 doing he responded, “I want to have sex, this could be my last time having sex.” Leah

 testified she told defendant she would have sex with him if he put the knife down,

 but she did not want to have sex, rather she “just wanted to go to the hospital[,]” and

 she only agreed so defendant would “put the knife down.”

¶3 Defendant had sex with Leah and requested her to do certain things, but she

 was in pain and “really couldn’t move.” At some point, Leah gained control of the

 1 A pseudonym is used.
 STATE V. HARRIS

 2021-NCCOA-44

 Opinion of the Court

 knife, and she testified defendant told her “it’s over for him now and he knows the

 police is coming and he just wanted me to let the knife go so he could kill hisself[.]”

 Leah begged for water, and defendant asked her “all of these questions,” and then

 took her phone into another room. Leah ran out of the house, still without her pants

 and screaming, and drove to a Kangaroo store “around the corner” for help. Leah

 required trauma surgery for her wounds from the stabbing, and she remained in the

 hospital approximately a week. During the first day of trial, when all of this

 testimony was presented, defendant did not object to Leah’s testimony about

 defendant’s statements.

¶4 On the second day of defendant’s trial, Leah informed the trial court she did

 not want “to testify against [her] husband.” Defense counsel argued Leah was

 attempting to assert marital privilege, and he would “move to strike all of her

 testimony from yesterday.” The State countered that marital privilege was not

 applicable if the defendant was being prosecuted for a felony he had committed

 against his wife. After much discussion and research, the trial court denied

 defendant’s motion to strike and informed Leah

 you have a duty in this case to testify and that based on the
 Court’s understanding of the statute, that you can be
 compelled to testify in this case and you have been
 subpoenaed in this case by the State to testify and that you
 have a duty and an obligation to answer all questions
 proposed of you or proposed to you in a truthful manner.
 STATE V. HARRIS

 2021-NCCOA-44

 Opinion of the Court

 And if you refuse to answer those questions, ma’am, you
 may be held and will be held in contempt of court[.2]

¶5 The jury found defendant guilty of attempted first degree murder and assault

 with a deadly weapon with intent to kill inflicting serious injury. The trial court

 entered judgments. Defendant appeals.

 II. Confidential Marital Communications

¶6 Defendant’s only argument on appeal is that “the trial court committed

 reversible error under N.C. Gen. Stat. § 8-57(c) when it allowed into evidence

 privileged marital communications that the State compelled defendant’s spouse to

 reveal pursuant to a subpoena.” (Original in all caps.) Whether a statement is “a

 privileged confidential communication” as defined by North Carolina General Statute

 § 8-57 “is a question of law” which this Court reviews de novo. State v. Matsoake, 243

 N.C. App. 651, 656, 777 S.E.2d 810, 813 (2015). Further, “[a]lleged statutory errors

 are questions of law and, as such, are reviewed de novo. Under de novo review, the

 appellate court considers the matter anew and freely substitutes its own judgment

 for that of the lower court.” State v. Hughes, 265 N.C. App. 80, 81–82, 827 S.E.2d

 2 Leah countered that she was not certain she was competent because she had “depression

 and posttraumatic stress disorder.” Counsel was appointed to represent Leah, and her
 counsel did not deem her to have any issues with competency as a witness. Leah’s
 competency as a witness is not at issue on appeal.
 STATE V. HARRIS

 2021-NCCOA-44

 Opinion of the Court

 318, 320 (citation omitted), stay dissolved, writ of supersedeas denied, and disc. review

 denied, ___ N.C. ___, 830 S.E.2d 827 (2019).

¶7 Defendant’s argument focuses on limited portions of Leah’s testimony he

 contends are “privileged and confidential marital communications[.] . . . Specifically,

 these communications were: (1) requests to have sex . . .; (2) confessions of suicidal

 thoughts . . .; and (3) admissions by defendant of guilt to crimes against his wife[.]”

 Defendant does not challenge her testimony describing defendant’s actions, including

 stabbing her repeatedly.

¶8 North Carolina General Statute § 8-57 provides,

 (b) The spouse of the defendant shall be competent but
 not compellable to testify for the State against the
 defendant in any criminal action or grand jury
 proceedings, except that the spouse of the defendant
 shall be both competent and compellable to so
 testify:
 ....
 (2) In a prosecution for assaulting or
 communicating a threat to the other spouse;
 ....
 (c) No husband or wife shall be compellable in any event
 to disclose any confidential communication made by
 one to the other during their marriage.

 N.C. Gen. Stat. § 8-57.

 To assess whether the conversations between
 defendant and his wife were in fact protected by subsection
 8–57(c), our analysis turns on whether there was a
 confidential communication between defendant and his
 STATE V. HARRIS

 2021-NCCOA-44

 Opinion of the Court

 wife in the DOC facilities. When defining a confidential
 communication in the context of the marital
 communications privilege, this Court has asked whether
 the communication was induced by the marital relationship
 and prompted by the affection, confidence, and loyalty
 engendered by such relationship.

 Rollins, 363 N.C. at 237, 675 S.E.2d at 337 (emphasis added) (citation, quotation

 marks and ellipses omitted).

¶9 The State contends that defendant failed to object to the statements at issue

 on appeal, and thus the issue is not preserved. Defendant contends his argument

 under North Carolina General Statute § 8-57 is preserved for appellate review even

 without a contemporaneous objection to the testimony. Defendant also made a

 motion to strike Leah’s testimony, and the trial court heard extensive argument on

 the issues and ruled on the motion. But even if we assume arguendo that defendant’s

 motion to strike Leah’s testimony properly preserved his argument for appeal, the

 portions of testimony he challenges here were not confidential communications.

¶ 10 The State also contends that North Carolina General Statute § 8-57 is not

 applicable because Leah’s testimony of defendant’s statements were not “confidential

 communication” under the statute. Defendant counters in his reply brief he “has only

 challenged confidential communications pursuant to N. C. Gen. Stat.§ 8-57(c),” and

 thus “the State’s attempt to rely on an exception to the N.C. Gen. Stat. § 8-57(b) rule

 is misplaced.” (emphasis added). In defendant’s reply brief he relies on Biggs v. Biggs,
 STATE V. HARRIS

 2021-NCCOA-44

 Opinion of the Court

 253 N.C. 10, 16, 116 S.E.2d 178, 183 (1960), wherein the Supreme Court stated, “It

 is true that an act of intercourse between husband and wife is a confidential

 communication[;]” but defendant takes this sentence entirely out of context to create

 his argument.

¶ 11 The issue in Biggs was: “Where, in an action by a husband for divorce on the

 ground of adultery, the wife pleads condonation and testifies that the husband had

 intercourse after agreeing to forgive her and that she is pregnant as a result of the

 intercourse, is it error to permit the husband to deny the intercourse?” Id. at 14, 116

 S.E.2d at 181. Based upon Biggs, a civil case under North Carolina General Statute

 § 8-56 as it was written in 1960, see id., 253 N.C. 10, 116 S.E.2d 178, defendant

 contends that “our North Carolina Supreme Court has recognized that

 communications about marital sex between spouses are confidential communications

 and N.C. Gen. Stat. § 8-57([c]) states, without exception, that no spouse ‘shall be

 compellable in any event to disclose any confidential communication made by one to

 the other during their marriage.’” Defendant argues any statement related to sexual

 intercourse between spouses is a “confidential communication” which the trial court

 cannot compel “in any event[.]”

¶ 12 We first note that only one of the statements challenged by defendant was

 about sex; the other statements were regarding suicidal thoughts and admission of

 guilt to his crimes. Further, defendant’s Biggs argument, applicable only to the
 STATE V. HARRIS

 2021-NCCOA-44

 Opinion of the Court

 statement regarding sex, entirely ignores North Carolina General Statute § 8-57

 (b)(2) which specifically provides that a spouse of a defendant “shall be both

 competent and compellable to testify” “[i]n a prosecution for assaulting or

 communicating a threat to the other spouse[.]” N.C. Gen. Stat. § 8-57(b)(2). A

 prosecution for attempted murder of a spouse and assault with a deadly weapon with

 intent to kill inflicting serious injury upon a spouse is “a prosecution for assaulting”

 the other spouse. Id.

¶ 13 Beyond the statements regarding sex, defendant also cites to criminal cases

 decided under North Carolina General Statute § 8-57 in support of his argument, but

 these cases are inapposite as the other spouse is not the victim in those cases, the

 very issue at the heart of North Carolina General Statute § 8-57(b)(2). See, e.g.,

 Rollins, 363 N.C. 232, 675 S.E.2d 334 (determining that spousal privilege under

 North Carolina General Statute § 8-57 “does not extend to communications occurring

 in the public visiting areas of the North Carolina Department of Correction (DOC)

 facilities because a reasonable expectation of privacy does not exist in such areas”);

 State v. Holmes, 101 N.C. App. 229 398 S.E.2d 873 (1990), aff’d, 330 N.C. 826, 412

 S.E.2d 660 (1992) (determining spousal privilege under North Carolina General

 Statute § 8-57 did apply when the defendant-husband told his wife he planned to kill

 someone else).

¶ 14 Ultimately,
 STATE V. HARRIS

 2021-NCCOA-44

 Opinion of the Court

 [w]hile recognizing that the cases and statutes pertinent to
 this issue have not been models of clarity, our Supreme
 Court has interpreted section 8–57 to mean that a spouse[]
 shall be incompetent to testify against one another in a
 criminal proceeding only if the substance of the testimony
 concerns a confidential communication between the
 marriage partners made during the duration of their
 marriage[.] This interpretation:
 allows marriage partners to speak freely to
 each other in confidence without fear of being
 thereafter confronted with the confession in
 litigation. However, by confining the spousal
 disqualification to testimony involving
 confidential communications with the
 marriage, we prohibit the accused spouse
 from employing the common law rule solely to
 inhibit the administration of justice.
 To fall within the purview of this privilege, the
 communication must have been made confidentially
 between wife and husband during the marriage.
 Accordingly, the determination of whether a
 communication is confidential within the meaning of the
 statute depends on whether the communication was
 induced by the marital relationship and prompted by the
 affection, confidence, and loyalty engendered by such
 relationship. With these rules in mind, we now turn to the
 facts of the case at bar.

 State v. Hammonds, 141 N.C. App. 152, 169–70, 541 S.E.2d 166, 179 (2000) (citations

 and quotation marks omitted), aff’d per curiam, 354 N.C. 353, 554 S.E.2d 645 (2001).

¶ 15 As applied here, defendant’s statements demanding sex from his wife after

 having repeatedly stabbed her and while still wielding a knife were not “prompted by

 the affection, confidence, and loyalty engendered by such relationship.” N.C. Gen.
 STATE V. HARRIS

 2021-NCCOA-44

 Opinion of the Court

 Stat. § 8-57(c) (emphasis added). Further, defendant’s statements of suicidal

 thoughts and concern about arrest for the crime defendant was in the process of

 committing against his wife cannot be said to spring from “affection, confidence, and

 loyalty” borne out of marital relations. Id. Defendant was not confessing to his wife

 about a prior crime against someone else or confiding in her about his plans of a

 future crime but instead speaking about the violent act he was currently committing

 – assaulting Leah while still wielding a weapon as she begged for water, attempted

 to escape from defendant, and desperately needed medical attention due to wounds

 inflicted by defendant – and his concerns about the possible repercussions. Although

 North Carolina General Statute § 8-57(c) could theoretically apply to a defendant’s

 statements made during the commission of a crime, in this situation, defendant’s lack

 of “affection, confidence, and loyalty” in making these statements could not be clearer.

 Id.

¶ 16 Defendant has also failed to demonstrate prejudice from the admission of these

 portions of Leah’s testimony. Even if we agreed with defendant that his statements

 were somehow prompted by “affection, confidence, and loyalty” based on the marital

 relationship, exclusion of these limited portions of Leah’s testimony would not affect

 the outcome of the case. Leah’s testimony regarding what defendant did to her and

 the evidence of her injuries was far more important than what defendant said while

 he was stabbing or assaulting her. Id.; see generally State v. Godley, 140 N.C. App.
 STATE V. HARRIS

 2021-NCCOA-44

 Opinion of the Court

 15, 26, 535 S.E.2d 566, 574–75 (2000) (“The erroneous admission of evidence requires

 a new trial only when the error is prejudicial. To show prejudicial error, a defendant

 has the burden of showing that there was a reasonable possibility that a different

 result would have been reached at trial if such error had not occurred.” (citations and

 quotation marks omitted)). This argument is overruled.

 III. Conclusion

¶ 17 For the foregoing reasons, we conclude there was no error.

 NO ERROR.

 Judges ARROWOOD and HAMPSON concur.